UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZAHIR NASERI,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL REGAS, et al.,<br><br>Defendants. | Case No. 4:25-cv-07163-KAW<br><br>**ORDER GRANTING MOTION TO DISMISS; ORDER CONTINUING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 15 |

On January 30, 2026, Defendant filed a motion to dismiss Plaintiff Zahir Naseri's initial complaint. (Def.'s Mot., Dkt. No. 15.)

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, GRANTS the motion to dismiss with leave to amend.

### I.   BACKGROUND

#### A.   Factual Background

Plaintiff Zahir Naseri is an Afghan-American Muslim and a U.S. citizen who was employed by the U.S. General Services Administration ("GSA") from April 9, 2023, until his termination on June 16, 2023. (Compl., Dkt. No. 1 ¶ 1.)

During his employment by GSA, Plaintiff alleges that he experienced several different types of discriminatory conduct. Plaintiff claims that, beginning on April 13-14, 2023, supervisor Michelle Daniels ("Supervisor Daniels") observed that he was "a Middle Eastern Muslim." (Compl. ¶ 14.)  Plaintiff further alleges that Supervisor Daniels later threatened him by saying, "I will f**k your probationary period." *Id.*

Plaintiff claims he requested telework and a compressed work schedule on three dates—

April 13, 2023, May 1, 2023, and June 8, 2023—which was consistent with the job announcement, written assurances, and GSA policy. (Compl. ¶ 15.)  Plaintiff informed Supervisor Daniels and GSA human resources "of his need for telework and schedule flexibility" as a result of unspecified "medical conditions," but that Defendant ignored or denied those requests and failed to engage in the interactive process. (Compl. ¶¶ 15-16.)  While Plaintiff was denied the ability to telework, "Project Manager James" was approved for 100% telework and was permitted overtime/comp time. (Compl. ¶ 17.)

Between April 17 and May 11, 2023, Plaintiff alleges that he "was subjected to excessive and targeted monitoring and restrictions," and that this was "not imposed on similarly situated employees." (Compl. ¶ 18.)  Also, from May 10-11, 2023, Plaintiff was instructed not to use an "exit/entry door", which provided convenient restroom access, despite his need for frequent restroom use. *Id.*

As a non-exempt employee, Plaintiff was entitled to overtime, but, before he could begin a scheduled multi-week project, an unidentified supervisor denied his overtime request. (Compl. ¶ 19.)  The project was later postponed, but Plaintiff was terminated before it began. *Id.*

On April 24, 2023, Plaintiff experienced an "acute medical emergency" at work. (Compl. ¶ 20.)  Plaintiff notified onsite staff and his supervisor, but GSA failed to provide treatment and Plaintiff was forced to "seek emergency room care independently." *Id.*  After this medical emergency, Supervisor Daniels allegedly demanded, reviewed, and improperly disclosed "Plaintiff's ER records and other private health information[.]" *Id.* Following the medical emergency, Defendant "retaliated" against Plaintiff by preventing him from using an "exit/entry door."[1] (Compl. ¶ 21.)

"From April through June 2023, Plaintiff repeatedly engaged in protected activity by reporting discrimination, harassment, and unsafe working conditions, meeting with EEO counselors, and filing both informal and formal EEO complaints." (Compl. ¶ 22.)  On May 14,

---

[1] It is not clear whether this is a different "entry/exit" door from that referenced in Paragraph 18, where Plaintiff alleges that he was prevented from using the door on May 10 and May 11, 2023. (*See* Compl. ¶ 18.)

2025, Plaintiff "submitted a written request to his supervisor seeking permission to meet with EEO counselors and made multiple verbal requests." *Id.* Plaintiff also emailed senior leadership on May 10, 2023 and June 12, 2023. *Id.* On May 30, 2023, Plaintiff sent a formal cease-and-desist letter to his supervisor, copying GSA Region 9 leadership and agency counsel, notifying Defendant of "ongoing discrimination, harassment, unsafe working conditions." (Compl. ¶ 23.)

On June 16, 2023, GSA terminated Plaintiff's probationary employment. (Compl. ¶ 24.) In support of that termination, GSA noted that (1) Plaintiff was disrespectful to his supervisor, (2) Plaintiff demonstrated combative or angry behavior in the workplace, (3) Plaintiff's coworker was uncomfortable around Plaintiff as a result of a chat message Plaintiff sent stating "I miss you," and (4) Plaintiff took excessive unscheduled leave. *Id.* Plaintiff's termination occurred on the same date Plaintiff filed a formal EEO complaint, but the complaint does not indicate which event happened first. *Id*.

### B.    Procedural Background

On August 26, 2025, Plaintiff filed an employment discrimination complaint consisting of six causes of action: 1) Disability Discrimination & Failure to Accommodate (Rehabilitation Act, 29 U.S.C. § 791 et seq.; 29 U.S.C. § 794a), 2) Disparate Treatment (Title VII - Race, Color, National Origin, Religion), 3) Hostile Work Environment (Title VII & Rehabilitation Act), 4) Retaliation (Title VII & Rehabilitation Act), 5) Improper Medical Inquiries & Breach of Confidentiality (Rehabilitation Act/ADA § 12112(d)), 6) Privacy Act, 5 U.S.C. § 552a(g).

On January 30, 2026, Defendant filed a motion to dismiss. (Def.'s Mot., Dkt. No. 15.)  On February 4, 2026, Plaintiff filed an opposition. (Pl.'s Opp'n, Dkt. No. 16.)  On February 20, 2026, Defendant filed a reply. (Def.'s Reply, Dkt. No. 18.)

### II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations

contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

### III.    DISCUSSION

Defendant moves to dismiss all claims under Rule 12(b)(6) for failure to state a claim. (Def.'s Mot. at 1.)  The Court agrees that the original complaint is deficient and that all claims are subject to dismissal.  As discussed below, the claims are not adequately pled, because Plaintiff left

4

out basic facts.[2] For example, Plaintiff does not include the position for which he was hired at GSA. Moreover, Plaintiff does not plead that he disclosed his disability and requested reasonable accommodation for his disability. Rather, he alleges that he requested telework and a compressed work schedule consistent with the job announcement due to "documented medical conditions." (Compl. ¶ 15.)  The Court will address additional deficiencies below.

### A.    General Pleading Concerns

As an initial matter, as Defendant argues, Plaintiff mixes various legal theories and statutory authority by combining claims, such as alleging a single claim for hostile work environment under Title VII and the Rehabilitation Act. (*See* Def.'s Mot. at 6-7.)  In so doing, Plaintiff does not identify any specific facts to explain the basis for his claim. (*See* Compl. ¶¶ 38-43.)  The retaliation claim (count 4) suffers from the same deficiency. For example, assuming Plaintiff can plead sufficient facts to amend these claims, he should plead hostile work environment under Title VII separately from the retaliation claim under the Rehabilitation Act.

### B.    Individual causes of action

#### i.    Count 1: Disability Discrimination & Failure to Accommodate

Plaintiff's first cause of action is for failure to accommodate under the Rehabilitation Act. (Compl. ¶¶ 26-31.)  Specifically, Plaintiff alleges that he is a qualified person with a disability under the Rehabilitation Act, that he requested telework and a compressed schedule as a reasonable accommodation for his disabilities, and that he provided medical documentation on May 1, 2023 and June 8, 2023. (Compl. ¶¶ 27-28.)  Plaintiff claims that Defendant denied his requests, failed to engage in the interactive process, and subjected him to adverse employment actions, including heightened monitoring, denial of overtime, restrictions, and termination.

"To establish a prima facie case of failure to accommodate under the Rehabilitation Act, [the plaintiff] must prove: (1) that he has a disability, (2) is otherwise qualified for employment, meaning that he could perform the essential job functions with or without a reasonable accommodation, and (3) that Appellee refused to reasonably accommodate his disability." *See*

---

[2] Plaintiff attached the EEOC's final decision as Exhibit A, but that does not excuse the sparse nature of the complaint's factual allegations.

*Buckingham v. United States*, 998 F.2d 735, 740 (9th Cir. 1993). Reasonable accommodations are "mechanisms to remove barriers or provide assistance to disabled individuals so that they can perform the "essential functions" of employment positions. *Cripe v. City of San Jose*, 261 F.3d 877, 889 (9th Cir. 2001).

Defendant moves to dismiss for failure to state a claim and identifies several deficiencies in the Complaint. (Def.'s Mot. at 8-10.)  First, Defendant argues that the complaint does not allege facts suggesting that Plaintiff had a cognizable disability within the meaning of the Rehabilitation Act. *Id.* at 8. To allege a covered disability under the Rehabilitation Act, the complaint must allege (1) that Plaintiff had a physical or mental impairment, (2) that the particular life activity constitutes a major life activity, and (3) that his alleged impairment substantially limits his ability to perform the identified major life activity.  *See Gribben v. United Parcel Serv., Inc.*, 528 F.3d 1166, 1169 (9th Cir. 2008)(citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)). Here, Plaintiff does not allege the specific medical condition or disability upon which he bases his claim, nor does he allege specific facts suggesting that he suffered an adverse employment action because of his disability. *See Estell v. McHugh*, No. 15-CV-04898-MEJ, 2016 WL 4140819, at *6 (N.D. Cal. Aug. 4, 2016) ("[P]urely conclusory" allegations regarding causation "are not sufficient to allow the Court to draw the reasonable inference that the [defendant] took these employment actions because of Plaintiff's disability.")  The fact that Plaintiff attached the unfavorable EEOC decision does not remedy the insufficiency in the pleading.

Second, the complaint concludes that GSA discriminated against Plaintiff when it denied his requests for "telework and a compressed schedule." (Compl. ¶¶ 28-29.)  Defendant contends that the complaint fails, however, to allege any facts that link that denial to Plaintiff's (unidentified) disability and it does not allege any facts suggesting animus against Plaintiff's alleged disability, such as direct evidence or derogatory comments about Plaintiff's disability. (*See* Def.'s Mot. at 9.)  This argument is well taken.

Finally, Defendant contends that, while Plaintiff alleges that he provided medical documentation, the complaint fails to allege that GSA knew that Plaintiff had a cognizable disability that might require "telework and a compressed schedule" as a reasonable

accommodation. (Def.'s Mot. at 10.)  Indeed, the complaint states that he "requested telework and a compressed work schedule consistent with the job announcement, written assurances, and GSA policy" and that he "reiterated these requests in writing and provided medical documentation on May 1, 2023 and again on June 8, 2023." (Compl. ¶ 15.)  Plaintiff informed his supervisor and human resources "of his need for telework and schedule flexibility due to documented medical conditions, and requested a timely interactive process as required under federal law." *Id.* For liability to attach, the employer must know the extent of the qualified individual's physical or mental limitations. *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (quoting 42 U.S.C. § 12112(b)(5)(A) (emphasis added)).  Here, there is no indication that Plaintiff disclosed his disabilities, let alone that telework and schedule flexibility were reasonable accommodations for them.

Accordingly, the Court finds that Plaintiff fails to state a claim for failure to accommodate and dismisses Count 1 with leave to amend.  Of course, if Plaintiff cannot plausibly allege facts to suggest that he suffered discrimination based on a failure to accommodate, he should not amend this claim.

### ii. Count 2: Disparate Treatment (Title VII - Race, Color, National Origin, Religion)

Plaintiff's second cause of action is for disparate treatment under Title VII. (Compl. ¶¶ 17, 32-37.)  To establish a *prima facie* case of disparate treatment under Title VII, a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for the position, (3) he suffered an adverse employment decision, and (4) he was treated differently than similarly situated persons outside of his protected class. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004); *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003).  At the threshold pleading stage, a cognizable disparate treatment claim requires a plaintiff to "allege either direct evidence of discrimination, such as derogatory comments about his gender or race, or circumstantial evidence, 'which may include allegations that similarly situated individuals outside [his] protected class were treated more favorably or that other circumstances surrounding the at-issue employment action give rise to an inference of discrimination.'" *Austin v. City of Oakland*, No. 17-CV-03284

YGR, 2018 WL 2427679, at *4 (N.D. Cal. May 30, 2018) (quoting *McCarthy v. Brennan*, 2016 WL 946099, at *4. (N.D. Cal. 2016)).  Here, Plaintiff does not allege any direct evidence of discrimination. Rather, he alleges that another employee, "Project Manager James," was approved for 100% telework and was permitted overtime/comp time while Plaintiff was not. (Compl. ¶ 17.) There are no other facts provided to permit a plausible inference that "Project Manager James" was similarly situated or that he did not share some of the same protected characteristics.

Accordingly, Count 2 is dismissed with leave to amend. If Plaintiff cannot plausibly allege facts to suggest that others similarly situated outside of his protected class was treated more favorably, he should not amend this claim.

### iii.    Count 3: Hostile Work Environment (Title VII & Rehabilitation Act)

Plaintiff's third cause of action is for hostile work environment under both Title VII and the Rehabilitation Act. (Compl. ¶¶ 38-43.)

A hostile work environment claim requires a plaintiff to allege "(1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on [a characteristic protected by Title VII or the Rehabilitation Act]; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action." *Anello v. Berryhill*, No. 18-cv-00070-DMR, 2019 WL 4141928, at *8 (N.D. Cal. Aug. 30, 2019) (Rehabilitation Act).  The Supreme Court has held that claims for hostile work environment must be based on more than "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).  While discrete acts "may be considered for purposes of placing non-discrete acts in the proper context," a hostile work environment claim must "rise to the level of an actionable claim" based on "timely nondiscrete acts." *Porter v. California Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005).

Defendant moves to dismiss on the grounds that the complaint fails to describe a hostile work environment, nor does it identify any acts of harassment based on Plaintiff's protected characteristics. (Def.'s Mot. at 14.) The Court agrees. As Defendant points out, the complaint

United States District Court
Northern District of California

8

"does not allege *any* comments, ridicule, intimidation or threats that are based on Plaintiff's race, ethnicity, or disability status. At most, the Complaint alleges that Supervisor Daniels made a factual statement that Plaintiff is "a Middle Eastern Muslim"—there is nothing facially wrong or derogatory with that factually correct statement." (Def.'s Mot. at 14.) Instead, it appears that Plaintiff is attempting to shoehorn employment decisions with which he disagreed into the hostile work environment framework, which is not sufficient to state a claim. *See Keller-McIntyre v. San Francisco State Univ.*, No. C-06-3209 MMC, 2007 WL 776126, at *13 (N.D. Cal. Mar. 12, 2007) (allegation involved "employment decisions with which she disagreed" rather than "physical or verbal conduct of a harassing nature").

Finally, Defendant argues that the complaint fails to identify any actions of harassment based on Plaintiff's protected characteristics. (Def.'s Mot. at 14.) In opposition, Plaintiff states that, in April 2023, his supervisor, Michelle Daniels, made derogatory remarks referencing Plaintiff's protected characteristics and threatening Plaintiff's employment "by saying, in effect, 'I will f*** your probationary period.'" (Pl.'s Opp'n at 2.) Plaintiff contends that these remarks were the beginning of a hostile work environment. *Id.* While this is a start, Plaintiff is advised that a single derogatory statement is not sufficient for a hostile work environment claim. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1115 (9th Cir. 2004) (quoting *Ray v. Henderson,* 217 F.3d 1234, 1245 (9th Cir. 2000) ("Although it is clear that '[n]ot every insult or harassing comment will constitute a hostile work environment,' '[r]epeated derogatory or humiliating statements ... can constitute a hostile work environment.'") In sum, one statement from Ms. Daniels is not sufficient to state a claim for hostile work environment. Additionally, the Court notes that Plaintiff's opposition is devoid of any facts to suggest that he was subjected to a hostile work environment due to disability.

Accordingly, Count 3 is dismissed with leave to amend. In amending, Plaintiff shall separately plead causes of action for hostile work environment under Title VII and the Rehabilitation Act and provide sufficient facts to allege claims under each law. If Plaintiff cannot allege hostile work environment under either Title VII or the Rehabilitation Act, he should not include a claim under that statute.

United States District Court
Northern District of California

####        iv.    Count 4: Retaliation (Title VII & Rehabilitation Act)

Plaintiff's fourth cause of action is for retaliation under both Title VII and the Rehabilitation Act. (Compl. ¶¶ 22, 44-49.) To state a claim for retaliation, a plaintiff must allege facts plausibly suggesting that: (1) he engaged in a protected activity; (2) he was subsequently subjected to an adverse employment action; and (3) a causal link exists between the two. *Manatt v. Bank of America*, 339 F.3d 792, 800 (9th Cir. 2003).

In moving to dismiss, Defendant argues that it is not clear from the face of the complaint that Plaintiff engaged in any protected activity before any of the purportedly adverse employment actions, including his termination. (Def.'s Mot. at 15.)  Indeed, while Plaintiff alleges that that he "repeatedly engaged in protected activity by reporting discrimination, harassment, and unsafe working conditions" from "April through June 2023" (Compl. ¶ 22), the complaint does not allege facts to demonstrate that any of that conduct qualifies as "protected activity."  *Cruz v. Brennan*, No. 19-cv-01140-DMR, 2020 WL 1233886, at *8 (N.D. Cal. Mar. 13, 2020) (dismissing retaliation claim where the plaintiff "does not allege that he ever opposed any conduct that fell within the protection of Title VII, including asserting discrimination based on race, color, religion, sex, or national origin"). Plaintiff must allege the facts underlying these reports, because it is possible that he complained about conduct that did not constitute discrimination or harassment.

In opposition, Plaintiff argued that he engaged in protected EEO activity beginning no later than May 14-15, 2023, and attached exhibits in support. (Pl.'s Opp'n at 3, Exs. F, G.)  Plaintiff did not, however, explain how these exhibits supported his retaliation claim nor did he tie them to disability discrimination under the Rehabilitation Act or discrimination due to race, religion, national origin under Title VII.

The insufficient pleading may be the result of combining two statutes into a single retaliation claim. Assuming Plaintiff has sufficient facts to allege retaliation under both statutes, in amending, he should identify the specific facts that underlly the claim, rather than relying on incorporating prior paragraphs, which runs afoul of Federal Rule of Civil Procedure 8. *See Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026) ("Incorporation by reference is permitted by Rule 10(b) and (c), but when it is used indiscriminately, it becomes a shortcut by counsel that

10

violates Rule 8.")

Accordingly, Court 4 is dismissed with leave to amend.

### v.    Count 5: Improper Medical Inquiries & Breach of Confidentiality (Rehabilitation Act/ADA § 12112(d))

Plaintiff's fifth cause of action is for breach of confidentiality under the Rehabilitation Act. (Compl. ¶¶ 50-54.)  In order to state a claim under the Rehabilitation Act for breach of confidentiality of medical information,[3] a plaintiff must allege facts showing: (1) that the information that was disclosed was "confidential" as defined in Section 12112(d), (2) that any medical information released was obtained through an entrance exam or disability-related inquiry, and (3) that he suffered a tangible injury as a result of the disclosure of the confidential medical information.  *See McCarthy v. Brennan*, 230 F. Supp. 3d 1049, 1063-64 (N.D. Cal. 2017) (recognizing claim for breach of confidentiality of medical information under the Rehabilitation Act).

As an initial matter, Defendant contends that neither the complaint nor the EEOC Decision (Compl., Ex. A) indicate that Plaintiff presented this claim during the administrative phase, since nothing resembling this claim is mentioned. Since the complaint fails to allege exhaustion of this claim, the claim is subject to dismissal on that basis. *See Leong v. Potter,* 347 F.3d 1117, 1121–22 (9th Cir. 2003) (affirming the district court's dismissal of Rehabilitation Act claim because the plaintiff failed to exhaust administrative remedies).

Nonetheless, the allegations are conclusory, and Plaintiff fails to state facts that, if true, satisfy the elements of this claim. Even so, Count 5 is dismissed with leave to amend. If Plaintiff did not include this claim in his EEOC claim, he should not include this claim in his first amended complaint.

### vi.    Count 6: Privacy Act, 5 U.S.C. § 552a(g).

The sixth cause of action is for violation of the Privacy Act and appears to be pled in the alternative. (Compl. ¶¶ 55-59.)  The Privacy Act prohibits a federal agency from disclosing "any

---

[3] The confidentiality provisions of the ADA are applicable to federal agencies under 29 U.S.C. § 791(g).

United States District Court
Northern District of California

United States District Court
Northern District of California

record which is contained in a system of records by any means of communication to any person, or to another agency, except . . . with the prior written consent of . . . the individual to whom the record pertains" and provides a cause of action for a party aggrieved by an unauthorized disclosure of information.  5 U.S.C. §§ 552a(b) & (g)(1)(D).

Defendant moves to dismiss because Plaintiff's allegations are conclusory. (Def.'s Mot. at 19.)  Indeed, the complaint alleges only that Supervisor Daniels "improperly disclosed Plaintiff's ER records" (Compl. ¶ 20), but it does not allege any facts to substantiate that conclusion, including to whom Supervisor Daniels disclosed the information, when/how she disclosed that information, or whether the person to whom she disclosed that material was not legally entitled to receive the information. (Def.'s Mot. at 19-20.) These facts, on their face, do not support a cognizable Privacy Act claim.  *See Pinson v. United States*, No. 18-cv-4293, 2018 WL 9537309 at *7 (C.D. Cal. Aug. 15, 2018) ("Plaintiff's conclusory allegation that Pelton disclosed her private medical information is unsupported, and this bare assertion, without more, is insufficient.")

Additionally, Defendant argues that Plaintiff fails to plead facts to suggest that he suffered "actual damages," which is a necessary element. (Def.'s Mot. at 20.) *See Al-Haramain Islamic Found., Inc. v. Obama*, 705 F.3d 845, 850 (9th Cir. 2012) (quoting 5 U.S.C. § 552a(g)(4)(A), "the United States shall be liable to [an] individual in an amount equal to the sum of . . . actual damages").  Sovereign immunity prevents recovery for mental or emotional distress because the Privacy Act "[did] not unequivocally authorize an award of damages for mental or emotional distress." *Id*. at 850 (quoting *F.A.A. v. Cooper*, 566 U.S. 284, 304 (2012)).  Defendant notes that the only damages sought are for back pay and lost benefits and "compensatory damages for emotional distress and aggravation of medical conditions" in the amount of $1,000,000. (Def.'s Mot. at 20 (citing Compl., Prayer for Relief, ¶¶ B and C (at page 9, lines 25-28)).  These damages sound in employment discrimination, rather than for the wrongful disclosure of medical information. Thus, this claim is subject to dismissal without leave to amend, because any amendment would be futile.

Accordingly, Plaintiff's Privacy Act claim is dismissed with prejudice.

**C.    Whether Plaintiff's Prayer should be limited to $300,000.**

Finally, Plaintiff seeks back pay and lost benefits in the amount of $500,000 and "compensatory damages for emotional distress and aggravation of medical conditions" in the amount of $1,000,000.  (Compl., Prayer for Relief, ¶¶ B and C (at page 9, lines 25-28).)

Defendant moves to limit this demand to $300,000, because compensatory damages are capped at this amount by statute. (Def.'s Mot. at 20 (citing 42 U.S.C. § 1981a(b)(3)(D)).) Pursuant to 42 U.S.C. § 1981a(b)(3)(D), compensatory damages for "a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year" is limited to $300,000.  The Court notes, however, that backpay, interest on backpay, and any other type of relief available under section 706(g) of the Civil Rights Act of 1964 are excluded from the $300,000 limit. 42 U.S.C. § 1981a(b)(2).

Thus, Defendant is correct, and Plaintiff's compensatory damages are limited to $300,000.

## IV.    CONCLUSION

For the reasons set forth above, the motion to dismiss is granted with leave to amend. Specifically, the Privacy Act claim (Count 6) is dismissed without leave to amend, while the remaining claims are dismissed with leave to amend. The amended complaint must also limit Plaintiff's prayer for compensatory damages for "emotional distress and aggravation of medical conditions" to $300,000 or less.

Plaintiff shall file the first amended complaint within 35 days of this order, and he shall attach a copy of his June 16, 2023 EEO complaint as an exhibit.  If Plaintiff cannot plausibly allege any of these causes of action upon further examination, he should not do so. Plaintiff is not permitted to add any additional cause of action without first obtaining leave of court.  The amended complaint replaces all previous complaints, so it must be complete and it may not refer to any prior filings. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992), as amended (May 22, 1992) (amended pleading supersedes the original pleading, so must name all parties, and include all facts and claims); Civil L.R. 10-1 (N.D. Cal. 2025) ("Any party filing … an amended pleading … may not incorporate any part of a prior pleading by reference.").

In amending his complaint, Plaintiff may wish to contact the Federal Pro Bono Project's

United States District Court
Northern District of California

13

Help Desk for assistance—a free service for pro se litigants—by calling (415) 782-8982.[4]  While Help Desk attorneys do not provide legal representation, they can assist Plaintiff in determining which claims are truly actionable based on what happened.  Plaintiff is advised that he is not guaranteed any more opportunities to amend his complaint, so it may be wise to use the resources available.

Finally, the initial case management conference set for May 26, 2026 is continued to September 15, 2026 at 1:30 p.m. via videoconference.  The joint case management statement is due on or before September 8, 2026.

IT IS SO ORDERED.

Dated: May 11, 2026

_____
KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

---

[4] It may take time to get an appointment, which is why the Court is giving Plaintiff five weeks to file an amended complaint. Plaintiff is advised to call immediately for an appointment should he wish to seek assistance.