UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ZAHIR NASERI,

Plaintiff,

v.

MICHAEL REGAS, et al.,

Defendants.

Case No. 4:25-cv-07163-KAW

**ORDER GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Re: Dkt. No. 26

On June 1, 2026, Defendant filed a motion to dismiss Plaintiff Zahir Naseri's first amended complaint. (Def.'s Mot., Dkt. No. 26.)

On August 6, 2026, the Court held a hearing, and, after consideration of the arguments raised in the briefing and at oral argument, GRANTS IN PART AND DENIES IN PART the motion to dismiss.

## I. BACKGROUND

### A. Factual Background

Plaintiff Zahir Naseri is Afghan-American and Muslim, and he was a probationary employee of the U.S. General Services Administration ("GSA") from April 9, 2023, until his termination on June 16, 2023. (First Am. Compl., "FAC," Dkt. No. 25 ¶¶ 2, 17, 62.) During his employment, Plaintiff claims he "disclosed medical conditions including diabetes and stress-related mental health conditions diagnosed and treated by licensed providers, including anxiety-related disorders, depression, insomnia, and panic-related symptoms." (FAC ¶ 3.) Plaintiff further alleges that "[t]hese conditions substantially limited major life activities, including sleep, concentration, and stress regulation." *Id.*

Plaintiff alleges that he experienced several different types of discriminatory conduct while

employed by GSA. On April 13, 2023, Plaintiff first requested reasonable accommodations for his disabilities from Supervisors Michelle Daniels ("Supervisor Daniels") and Jacqueline Peters ("Supervisor Peters"), including telework and schedule flexibility supported by medical documentation, but those requests were denied without meaningfully engaging in the interactive process. (FAC ¶¶ 4, 19-20.) While Plaintiff was denied the ability to telework, another "similarly situated coworker outside Plaintiff's protected classes, … [and] performing substantially similar duties under the same supervisory chain," was approved for full-time telework. (FAC ¶ 21.)

Plaintiff claims that, beginning on April 13, 2023, Supervisor Daniels observed that he was "a Middle Eastern Muslim." (FAC ¶ 22.) During that same interaction, Plaintiff alleges that Supervisor Daniels threatened him by saying, "I will f**k your probationary period." *Id.* On April 14, 2023, Supervisor Daniels allegedly made similar statements involving Plaintiff, where she referenced his protected characteristics and his probationary employment status. (FAC ¶ 23.) Plaintiff contends that these statements were made in the context of his employment, including discussions related to his work assignments and requests for workplace accommodations. (FAC ¶ 24.) Plaintiff alleges that, "[o]n or about May 30, 2023, he sent a written cease-and-desist communication to his supervisor, with copies to GSA Region 9 leadership and agency counsel, notifying Defendant of alleged discrimination, harassment, and hostile work conditions," and "also submitted written complaints regarding workplace treatment to management during this period." (FAC ¶¶ 25-26.)

On May 14, 2023, Plaintiff informed Supervisors Daniels and Peters of his intent to pursue EEO protections and related grievances concerning workplace treatment and accommodations issues. (FAC ¶¶ 27, 37(a).) On May 15, 2023, Plaintiff initiated contact with GSA's EEO office and began the EEO complaint process. (FAC ¶ 37(b).) Plaintiff alleges that Defendant retaliated against him through "increased scrutiny, restrictions on assignments, and exclusion from project management meetings regarding ongoing work." (FAC ¶ 30.) Plaintiff further alleges that, on or about May 23, 2023, he reported concerns regarding discrimination, threats, and retaliation to GSA management, including Service Center Director Jason Cawthrone and American Federation of Government Employees ("AFGE") representative John Garvey. (FAC ¶ 37.) Plaintiff alleges

that Defendant also retaliated by denying his "renewed request for workplace accommodation" on June 8, 2023, and by not approving "overtime or compensatory time" on June 13, 2023. (FAC ¶¶ 31-32.) Plaintiff contends that Supervisors Daniels and Peters were copied on all of his complaints, accommodations requests, and EEO communications. (FAC ¶ 38.)

On June 16, 2023, GSA terminated Plaintiff's probationary employment. (FAC ¶ 34.) Plaintiff's termination occurred one day after his participation in an EEO and AFGE interview. (FAC ¶ 35.)

### B. Procedural Background

On May 11, 2026, the Court dismissed Plaintiff's initial complaint with leave to amend. (5/11/26 Order, Dkt. No. 24.) On May 18, 2026, Plaintiff filed a first amended complaint consisting of four causes of action: 1) Retaliation (Title VII), 2) Hostile Work Environment (Title VII), 3) Disparate Treatment (Title VII), and 4) "Failure to Accommodate/Disability Discrimination" (Rehabilitation Act).

On June 1, 2026, Defendant filed a motion to dismiss. (Def.'s Mot., Dkt. No. 26.) On June 4, 2026, Plaintiff filed an opposition. (Pl.'s Opp'n, Dkt. No. 27.) On June 22, 2026, Defendant filed a reply. (Def.'s Reply, Dkt. No. 29.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

## III. DISCUSSION

Defendant moves to dismiss all causes of action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Def.'s Mot. at 1.)

### A. Individual causes of action

#### i. Count 1: Retaliation

Plaintiff's first cause of action is for retaliation under Title VII. (FAC ¶¶ 35-45.) To state a claim for retaliation, a plaintiff must allege facts plausibly suggesting that: (1) he engaged in a protected activity; (2) he was subsequently subjected to an adverse employment action; and (3) a causal link exists between the two. *Manatt v. Bank of America*, 339 F.3d 792, 800 (9th Cir. 2003).

In moving to dismiss, Defendant contends that this claim should be dismissed for multiple reasons. (Def.'s Mot. at 6.) First, Defendant argues that while the operative complaint alleges that

Plaintiff made complaints, "it is possible that he complained about conduct that did not constitute discrimination or harassment." (Def.'s Mot. at 6-7.) This argument is not well taken, because Plaintiff clearly alleges that he engaged in EEO activity related to "workplace treatment and accommodation issues." (*See* FAC ¶ 37(a).)

Second, Defendant argues that the complaint fails to allege a causal connection between Plaintiff's "EEO protected activity" on May 14-15, 2023 and the alleged adverse actions that followed. (Def.'s Mot. at 7.) In opposition, Plaintiff argues that the temporal proximity of the adverse actions supports a causal inference of retaliation. (Pl.'s Opp'n at 3.) Plaintiff is correct. Causation can be inferred by the temporal proximity between the protected activity and the adverse actions. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004) ("The temporal proximity between [the plaintiff's] protected activities and [the defendant's] adverse acts sufficiently raises an inference of a causal link."); *see also Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1300 (N.D. Cal. 2020) (noting that allegation of participating in EEO process prior to alleged adverse actions is sufficient).

Third, Defendant contends that, while Plaintiff alleges that he filed his EEO Complaint on June 16, 2023, he does not allege that he filed it prior to his termination. (Def.'s Mot. at 7.) In opposition, Plaintiff argues that he first engaged in protected EEO activity no later than May 2023. (Pl.'s Opp'n at 3.) The Court notes that Plaintiff alleges that he participated in an EEO interview the day before his termination. (*See* FAC ¶ 35.) At the pleadings stage, this is sufficient.

Accordingly, the motion is denied as to the retaliation claim.

**ii. Count 2: Hostile Work Environment (Title VII)**

Plaintiff's second cause of action is for hostile work environment under Title VII. (FAC ¶¶ 46-60.) A hostile work environment claim requires a plaintiff to allege (1) he was subjected to verbal or physical conduct a based on a protected class, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. *Vasquez v. Cnty. of Los Angeles,* 349 F.3d 634 (9th Cir.2003). The Supreme Court has held that claims for hostile work environment must be based on more than "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l*

*R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). While discrete acts "may be considered for purposes of placing non-discrete acts in the proper context," a hostile work environment claim must "rise to the level of an actionable claim" based on "timely nondiscrete acts." *Porter v. California Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005).

First, Defendant moves to dismiss on the grounds that the operative complaint fails to describe a hostile work environment as a matter of law. (Def.'s Mot. at 8.) Specifically, Defendant contends that Plaintiff "does not allege *any* comments, ridicule, intimidation or threats based on his race, ethnicity, or disability status." *Id.* (emphasis in original). In opposition, Plaintiff argues that the FAC alleges a pattern of repeated hostile conduct by a supervisor, threatening and intimidating statements, ongoing workplace targeting and restrictions, and conduct that affected the conditions of his employment. (Pl.'s Opp'n at 5.) The Court notes that the opposition failed to identify the incidents that, in totality, constitute a hostile work environment. *See id.* Furthermore, the cause of action alleges that the adverse treatment began shortly after he "engaged in protected EEO activity in May 2023…." (FAC ¶ 47.) Thus, Plaintiff appears to be rehashing his retaliation claim.

Moreover, Defendant correctly asserts that the only specific acts of purported harassment alleged is that Supervisor Daniels made a statement that Plaintiff is "a Middle Eastern Muslim." (Def.'s Mot. at 8 (citing FAC ¶ 52).) Even if this statement constituted a derogatory remark referencing Plaintiff's protected characteristics in the context of their conversation where she allegedly threatened his probation, one or two derogatory statements is not sufficient for a hostile work environment claim. *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1115 (9th Cir. 2004) (quoting *Ray v. Henderson,* 217 F.3d 1234, 1245 (9th Cir. 2000) ("Although it is clear that '[n]ot every insult or harassing comment will constitute a hostile work environment,' '[r]epeated derogatory or humiliating statements ... can constitute a hostile work environment.'") In an apparent attempt to plead a hostile work environment without providing actual facts, Plaintiff alleges that "[t]he conduct described… was not isolated, but occurred repeatedly and in combination with exclusion from workplace communications and operational processes, creating a pattern of adverse treatment affecting Plaintiff's ability to perform essential job duties." (FAC ¶

54.) One or two statements from Ms. Daniels, even with a vague allegation that they were not isolated incidents, is not sufficient to state a claim for hostile work environment.

At the hearing, Plaintiff explained that, during the same week of his employment, Supervisor Daniels expressed surprise that he was from Afghanistan, because she believed he was from Iran. She then described Afghanistan as "war torn" and opined that the country was "f***ed up." During Plaintiff's employment, Supervisor Daniels would refer to him as "kid" instead of his name, and send him emails that were informal and curt. Plaintiff also alleged that he was excluded from the weekly project manager meetings, had projects taken away, and was otherwise isolated. While this may not be an ideal working environment, these additional allegations are not sufficient to state a claim for hostile work environment based on national origin or religion.

Instead, Plaintiff continues to attempt to shoehorn employment decisions with which he disagreed into the hostile work environment framework, which is not sufficient to state a claim. *See Keller-McIntyre v. San Francisco State Univ.*, No. C-06-3209 MMC, 2007 WL 776126, at *13 (N.D. Cal. Mar. 12, 2007) (allegation involved "employment decisions with which she disagreed" rather than "physical or verbal conduct of a harassing nature").

Accordingly, the hostile work environment claim is dismissed without leave to amend, because any amendment would be futile.

**iii. Count 3: Disparate Treatment (Title VII - Race, Color, National Origin, Religion)**

Plaintiff's third cause of action is for discrimination under Title VII. (FAC ¶¶ 61-76.) To establish a *prima facie* case of disparate treatment under Title VII, a plaintiff must show that (1) he is a member of a protected class, (2) he was qualified for the position, (3) he suffered an adverse employment decision, and (4) he was treated differently than similarly situated persons outside of his protected class. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004); *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003). At the threshold pleading stage, a cognizable disparate treatment claim requires a plaintiff to "allege either direct evidence of discrimination, such as derogatory comments about his gender or race, or circumstantial evidence, 'which may include allegations that similarly situated individuals outside [his] protected class were treated

United States District Court
Northern District of California

more favorably or that other circumstances surrounding the at-issue employment action give rise to an inference of discrimination.'" *Austin v. City of Oakland*, No. 17-CV-03284 YGR, 2018 WL 2427679, at *4 (N.D. Cal. May 30, 2018) (quoting *McCarthy v. Brennan*, 2016 WL 946099, at *4. (N.D. Cal. 2016)).

Defendant argues that Plaintiff fails to allege specific facts to show that any "comparators" were treated more favorably. (Def.'s Mot. at 11.) The Court disagrees. Plaintiff alleges that another similarly situated employee in a similar position, who did not share Plaintiff's protected characteristics, was approved for full-time telework while Plaintiff was not. (FAC ¶¶ 17, 64.) Discovery may reveal that this coworker is not a comparator, but that is more appropriately addressed on summary judgment.

Accordingly, the motion is denied as to the disparate treatment claim.

**iv. Count 4: Failure to Accommodate**

Plaintiff's fourth cause of action is for failure to accommodate[1] under the Rehabilitation Act. (FAC ¶¶ 71-83.) "To establish a prima facie case of failure to accommodate under the Rehabilitation Act, [the plaintiff] must prove: (1) that he has a disability, (2) is otherwise qualified for employment, meaning that he could perform the essential job functions with or without a reasonable accommodation, and (3) that Appellee refused to reasonably accommodate his disability." *See Buckingham v. United States*, 998 F.2d 735, 740 (9th Cir. 1993). Reasonable accommodations are "mechanisms to remove barriers or provide assistance to disabled individuals so that they can perform the "essential functions" of employment positions. *Cripe v. City of San Jose*, 261 F.3d 877, 889 (9th Cir. 2001).

Here, Plaintiff alleges that he has specific medical conditions, that he can perform the essential functions of his position with reasonable accommodations, that he requested telework and flexible scheduling as reasonable accommodations for his disabilities, and that he provided medical documentation on April 13-14, 2023 and June 8, 2023. (FAC ¶¶ 72-74.) Plaintiff claims that Defendant denied his accommodation requests without engaging in a good faith interactive

[1] Plaintiff clarified in his opposition that the claim is for failure to accommodate, and that he is not also alleging a separate claim of disability discrimination. (*See* Pl.'s Opp'n at 4.)

process, and subjected him to adverse employment actions, including denial of overtime, workplace restrictions, and termination. (FAC ¶¶ 76-81.)

Defendant moves to dismiss on the grounds that Plaintiff has failed to adequately allege that he had a cognizable disability that requires reasonable accommodation. (Def.'s Mot. at 14.) To allege a covered disability under the Rehabilitation Act, the complaint must allege (1) that Plaintiff had a physical or mental impairment, (2) that the particular life activity constitutes a major life activity, and (3) that his alleged impairment substantially limits his ability to perform the identified major life activity. *See Gribben v. United Parcel Serv., Inc.*, 528 F.3d 1166, 1169 (9th Cir. 2008)(citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)). Plaintiff corrected the deficiencies from the original complaint, and adequately alleges a disability under the Rehabilitation Act:

> During Plaintiff's employment, Plaintiff had medical conditions including diabetes, anxiety related disorders, depression, insomnia, panic-related symptoms, and stress-related conditions that substantially limited major life activities including sleep, concentration, endocrine function, and stress regulation. With reasonable accommodation, including telework and schedule flexibility, Plaintiff could perform the essential functions of his position.

(FAC ¶ 72.) Moreover, despite Defendant's arguments to the contrary, Plaintiff does clearly allege that he "requested reasonable accommodations, including telework and flexible scheduling, to manage his medical conditions and maintain consistent work performance" on both April 13-14, 2023 and on June 8, 2023, and that he "provided supporting medical documentation to his supervisors and/or management personnel." (FAC ¶¶ 73-74.)

Accordingly, the Court finds that Plaintiff sufficiently states a claim for failure to accommodate, so the motion is denied as to this claim.

**B. Plaintiff's failure to attach the EEO Complaint**

In dismissing the original complaint, the Court ordered Plaintiff to "attach a copy of his June 16, 2023 EEO complaint as an exhibit." (5/11/26 Order at 13.) At the hearing, Plaintiff explained that he was originally unable to locate a copy of his claim, but he recently found a hard copy. Thus, within 14 days of this order, Plaintiff is ordered to file an errata to the first amended complaint with the EEO complaint attached as Exhibit B.

## IV. CONCLUSION

For the reasons set forth above, the motion to dismiss is GRANTED IN PART AND DENIED IN PART with leave to amend. Specifically, the hostile work environment claim is dismissed with prejudice, because any amendment would be futile. The motion is denied in all other respects. Defendant shall file an answer within 21 days of this order.

Additionally, Plaintiff shall file an errata to the first amended complaint within 14 days of this order with the EEO complaint attached as Exhibit B.

Finally, the initial case management conference set for September 15, 2026 is continued to October 13, 2026 at 1:30 p.m. via videoconference. The joint case management statement is due on or before October 6, 2026.

IT IS SO ORDERED.

Dated: August 20, 2026

KANDIS A. WESTMORE
United States Magistrate Judge